I'm going to call the second case as soon as the courtroom is cleared a bit, let's see. Okay. Case number two. 23-1463 Nathaniel Pryor v. Michael Corrigan. Mr. Dickmar, Dickmar. Good morning. Good morning, your honor. May it please the court, counsel. I'm Irene Dimkar and I represent the plaintiff Nathaniel Pryor. We're asking the court to reverse the order granting summary judgment to the defendants and consider granting it to the plaintiff. On the claims of false arrest, malicious prosecution, excessive force at the tackle, and the first two or three searches. We're also asking the court to vacate the jury verdict and remand for a new trial because of cumulative effect of errors at trial. Now, regarding summary judgment, the court based its decision, made a determination upon viewing two dashed camera videos. It determined that there was probable cause for arrest and malicious prosecution and that there should be qualified immunity for the tackle. I'd like to address the videos first. The court applied its own interpretation to the videos, usurping the role of the jury. In the Kalin case, this court has held that it should be a rare case where the video evidence leaves no room for interpretation by the finder of fact. Well, Scott, Ms. Dimkar, Scott v. Harris, the Supreme Court decision from 2007 does allow the court to view the video. I'll concede that there are instances when you view a video and there can be multiple interpretations. There's also many instances when you review a video and there's not. Why does this fall into a multiple interpretation category and not a clear from the video category? Well, first of all, Scott involved a high-speed chase, and the plaintiff was saying that there wasn't... This was sort of a low-speed chase. Very low. He was getting away, right? I mean, I know you're saying that wasn't what he was doing, but from all accounts in that video, it's hard to conclude that that's not what he was doing. Well, we contend that he was not fleeing a stop, and we think the jury should have looked at that video. Well, they did see the video, correct? The jury did. They saw the video, but they weren't dealing with false arrests. They were only dealing with two punches and the third search. Correct. That's all they were dealing with. Which, by the way, the defendant said did not occur. Pardon me? The defendant's defense was that the third search did not occur. That's correct. And you're making claims that we should reverse based on your argument where the defendant said it never occurred in the jury found by the defendant. For the defendant, what basis is there to reverse that? Well, you're talking about the third search. You're saying the third search wasn't reasonable. The defendant said the third search never occurred. The defendant won, and now you're asking us to reverse and grant summary judgment for the plaintiff and conclude that the third search wasn't reasonable when it didn't occur, which is a weird argument. Well, the judge also instructed the jury that it was incident to an arrest, and that's why the search would have been okay. No, no, but they found for the, okay, okay, go ahead. I understand. So you're saying you don't know what the jury concluded. They may have concluded that it was incident to a lawful arrest. That's right, because they were instructed on that. Okay. They were instructed that there was an arrest. They weren't told anything about the arrest or what the arrest was for, but they were told that the search was incident to the arrest. So the trial was very strange, Judge Kirsch. You have to understand that because it only involved two punches and one of three searches. It was very difficult to determine what was going to come in and what wasn't going to come in. If I was on the jury, I would have been totally confused about what was going on because it was not clear what they were supposed to decide, and all this information came in, I'll get to this in a minute, but of the drug surveillance and everything else, that this was an investigation, it was a dangerous situation. They were, of course, they were overwhelmed by what they were hearing. General verdict or special verdict? Pardon me? General verdict or special verdict? General. General verdict. Okay. So we say that the plaintiff was not fleeing a traffic stop. He was moving towards the police. Two police officers ran past him. They didn't consider him a flight risk. He was not moving fast. I mean, the trial judge described it as ambling, shuffling, lumbering, you know, whatever. He's not running. His pants are falling down. He was trying to get in front of the dash camera, and if he hadn't got in front of that dash camera, we wouldn't have those videos. Well, you know, we've seen it. Oh, I'm sorry. Go ahead, Judge. There are two ways to think about that, seems to me. Of course, Mr. Pryor claims he just wanted to get himself in front of the dash cam for his protection, but there are two ways to think about it. One was, would be, it seems to me, he was moving quickly, yes, to get himself in front of the dash cam for his protection. But the second way to think about it is he was thinking about fleeing, started down the driveway, but then decided it was, you know, too futile or too dangerous and stopped and put his hands up in front of the police car. And for me, it certainly isn't clear which of the two it might have been. Well, then it would be a question for the jury if that's the case. I mean, we brought a motion of summary judgment thinking the videos were so clear that we should have summary judgment, and, of course, the defendants moved for summary judgment themselves. What the court below said is if he was trying to get away, it wasn't much of a getaway. He wasn't moving fast. He was going towards a police officer. And he gave his reasons why he left the car. He said it could have gotten bad quick. I know what happens. I know what happens to black men in vans. If I stayed in the van, they would have assumed I was reaching for something or concealing something. I wanted to make myself visible and show that I was not a threat. And so ‑‑ Yeah. Go ahead. No, go ahead. No, I finished the thought. So I want to hear your question. I think we ought to go on, if you don't mind, to the evidentiary decisions at trial. Sure. Regarding whether there was obstruction of a peace officer, we do have the defendant's Rule 36 admission that they were not claiming they had probable cause to arrest the plaintiff for any crime other than resisting arrest. And for resisting arrest, you have to have an underlying crime. Well, not at the time. Not in 2015 you didn't. Yes, you did. Where did the statute say that? I might have missed it. Not the statute. The statute leaves room for interpretation. Two court cases we cited said that you need an underlying crime. You need an underlying crime. It got codified. Yes, it got codified after this case. But still, it was understood that there had to be an underlying crime. And we believe the defendants conceded themselves into summary judgment for the plaintiff. Rule 36 is supposed to eliminate issues from a case. Advisory Committee says it's comparable to stipulation. When you say, I'm not claiming I have probable cause for anything except resisting arrest, then you're stuck with that. That's not quite right because we have cases that say, let me give you an example. An officer is in a high crime area, let's say, and an officer makes an arrest. And you ask the officer in a deposition, were you scared? Nope, I wasn't scared. I weighed 240 pounds. I have black belt in karate. I wasn't scared. That's not the test. It's not the test whether Officer Smith was scared. It's the test whether a reasonable officer in Officer Smith's position would have been scared because it was a high crime area. Why is that not the same here? If this officer says, I arrested for resisting, okay, but there are other charges that could apply, why does it make any difference as to what this particular officer said in response to a request for an admission? He didn't say, I was arresting for resisting arrest. He said, I do not claim I had probable cause for any crime other than resisting arrest. But what difference does that make if there is, in fact, probable cause for another crime? Because it's supposed to be conclusive. Rule 36 is supposed to take issues out of the case. The rule explicitly permits admission of matters relating to facts, application of law to facts, and opinions about either. This was application of law to fact. They said, we're not going there. We're not saying we had probable cause for anything except resisting arrest. You cannot go up to somebody and arrest the person for resisting arrest. There has to be an arrest. And the case law says that, and now the statute says that too. When he left the van, there is case law, the Kotlinski case, an Illinois case, says it is not a crime to leave the van. You can get out of the van. That itself is not a crime. Moving 20 feet, when he's not moving fast, he's not, I disagree with Judge Rogner. I don't think he's thinking about whether I can run or not. This man could not run. He's a large man, and his pants are falling down. He goes about 20 feet, and he passes, two officers pass him, and he's like, they said, one of them, Christoffel said, he acted confused. He was confused. He was like, okay, here I am. Let me ask you one question. Let's say there was not probable cause for resisting or obstructing a police officer. Why in this case wouldn't there at least be, I forgot what the phrase is. It just slipped my mind. It's sort of close to probable cause. I forgot what the phrase is. Arguable. Arguable. That's it. Thank you. Arguable probable cause here for resisting. Police officers pull over a van. One guy jumps out and darts one way. Another guy jumps out and kind of moves the other way. And the police officers chase the guy that they're looking for into the backyard, and then they tackle and arrest the guy that's moving the other way from the van. Why isn't there at least arguable probable cause here? First of all, I wanted to correct Your Honor. They don't know who's in the van. They don't know that Raymond Johnson's in the van. They just know that one man took off into the backyard. That's all they know. Well, they were investigating a drug activity, and they had a tip that they were dealing drugs, and then they pulled the van over and he darts out of the van. Right. A man started out of the van. I just wanted to say that they don't know who's in the van. And we could talk about the surveillance itself. The surveillance amounted to nothing. All they had was a tip that there was cocaine being cooked at 1020 Cain Street. Why didn't they get a warrant for the address? That's their focus. They probably didn't have probable cause. They didn't. It doesn't matter. What difference does it make? They didn't have probable cause to search, and they didn't have probable cause to stop the van for drug activity, which is what the judge told the jury was involved. I mean, the trial was, this is a traffic stop related to drug activity. Whoa. I don't know what just happened there. Sorry. And there is no proof that there was drug activity. There was nothing they saw that was confirming anything when they sat across. They sat in a church parking lot that was up the street in Kitty Corner. All they saw was a van, and they didn't have a license plate. They didn't have a make, a model, a color, anything. They saw the van go down the street, and they said, let's follow that van. So there's a lot of missing knowledge here. They know that there's a, they've been told there's a Raymond Johnson who's in the house cooking cocaine, and he's going to be in a van. They see a van. They don't know, they don't see anybody get in. They don't see anybody get out, see no criminal activity. Van pulls out, and they say, let's follow the van. Well, that's fine. They can follow anything they want, and they can, the arrest is for a traffic stop. It's a pretext stop, but that's legal, right? So they can do that, but then to elevate it and bootstrap themselves into saying that this was a drug raid fraught with danger, which is how the defendants described it. This is not a drug raid. This is a traffic stop, and what you have is a man who's passively standing. He's compliant. He is standing right there when he gets tripped to the ground. The qualified immunity in this case is only for the tackle, by the way. You mentioned this probable cause or, you know, that there wasn't any kind of ruling that this was, that there was qualified immunity on the probable. The judge's rule is no probable cause. And I would ask the court not to insert that into the case at this time. The qualified immunity was for the excessive force. Ms. Steichner, I would really like to ask you something, and time is truly running out. Sure. And here's what I want to ask you on this subject. The court instructed the jurors that Pryor was not arrested or charged with any drug-related offense, right? Yes. Why was that enough to counter the prejudice from the officer's evidence that they were conducting drug surveillance? We believe that that was like a wink and a nod. It was like he wasn't arrested for a drug charge, and he wasn't charged with it. It either meant that he got away with something, because we had that whole search into the pants where the officer is saying, it's falling, it's dropping, it's falling, it's dropping. And Nathaniel Pryor wasn't able to say, you know, I didn't have any drugs on me. Really, the inference to the jury was that there were drugs in his pants. And then he was not charged. Well, what was he charged with? Maybe he's a fugitive from justice. Maybe he committed some heinous crime. You know, the jury could have thought anything. We asked that the jury be told that he was charged with resisting arrest, that there was an arrest, but it was for resisting arrest, and that it was not any of their concern. So being told that you're not, that he was not charged with or arrested with a drug offense, created more problems. And we said that to the court. We think this creates more problems, because the jury is going to say, well, what was he arrested for? Gee, it must have been something terrible. So that was not, we thought that that was an error. Unless either Judge Brennan or Judge Kirsch has any questions, I'm going to ask you to please stop there. May I have rebuttal time? I will give you some, yes. Okay, thank you. Thank you very much. Because I will. Okay. All right. Okay, thank you. It's okay. Oh. May it please the court? Hi, Ms. Proctor. Okay. Good morning. On behalf of the appellees, I will address the trial court's evidentiary rulings at trial. My colleague, Mr. O'Donnell, will address the trial court's summary judgment rulings at issue in this appeal. To be clear, I think if the court, if you have not, you will review the court's trial transcript. Judge Seeger worked very, very hard to ensure a fair trial. And the framework and the standard of review of the trial court's evidentiary rulings are an abuse of discretion. And we have not heard anything, and I don't believe the plaintiff has presented any evidence that there's any grounds to vacate the jury verdict. Can I ask you one question? Sure. The answer may be harmless, okay? So the answer may be harmless, but that's not the answer I want you to give me. When the judge admitted Corrigan's, the video of Corrigan's statements, okay? And said that they were, they fell under hearsay exception. I think Judge Seeger concluded that they fell under the then existing state of mind exception. How so? And the reason I ask that is it concerns me. We live in a world now where police officers, and in some cases, individuals that are suspected of crimes have adapted to cameras. When I was a judge's attorney, there was a big fight over whether you're going to have dashboard cameras, body cameras. The world has adapted because we have these things. And would it be appropriate for us in an opinion to say that a police officer sort of after the fact, after the arrest, just after the fight, right? Statements on a day, and they're caught on a dash cam video should be admitted to show the officer's then existing state of mind. State of mind is more like excited utterance type stuff than if an officer comes in front of a video camera and justifies his prior actions. Now here, of course, he testified. So it may be, he testified to what he saw in the video and what happened in the video, just cumulative what happened. But why should that, why should that language as exchange have been admitted? Well, in, in the trial, the plaintiff wanted, you know, the video admitted into evidence and she, and the plaintiff wanted it admitted and the jury to hear everything up to the point where officer Corrigan responded to the plaintiff, the plaintiff's question. I actually think that's a reasonable position. Well, but you have to listen to what, what the plaintiff is saying in the video. He, he asked officer Corrigan no less than 15 times while he was, while he was on the ground being, you know, after he was secured, sir, what seems to be the problem, sir? What seems to be the problem to cut it off there really would give an inaccurate picture of what happened. It wasn't offered for the truth of the matter of cert it. And it was a conversation between officer Corrigan and the plaintiff. If it wasn't offered for the truth, then why was it offered? It was offered to show officer Corrigan's state of mind. And this is within seconds after this whole event took place. Okay. After the takedown and after securing the plaintiff, this, it, it did go to the reasonableness of the use of force. And I think we have to keep in mind at trial, the only, the only claim against officer Corrigan was whether or not he used excessive force in violation of the, of the fourth amendment. And officer Corrigan's state of mind goes to the reasonableness of the force. He simply answered Mr. Pryor's question, which was, what's the problem? And he said, and here's, and it was a conversation. It was, it was, sir, what, you know, officer Corrigan's response was, well, when, just want to get it exactly, that he, that when people, when you stop a vehicle, people don't run. That was, that was the extent of it. And it also goes to punitive damages. The plaintiff was seeking punitive damages, which show, which, which in order to prevail, they have to demonstrate actual malice. In order for officer Corrigan to defend that claim, the judge also thought it was probative of whether or not, you know, on the issue of punitive damages, the lack of malice. Officer Corrigan simply explained why he did what he did. And it really was not a statement of the law, you know, and if this court disagrees, the judge's jury instruction was very clear on that. You know, it's at docket 304, page 22 of 38, the jury instruction clearly stated that any statement of law comes from the court, not the parties, including the conversation between the plaintiff and Corrigan in the video. So, I mean, to the extent- Yeah, the malice argument may be a good one. I'm not sure the state of mind, I mean, the state of mind is for the truth of the matter asserted. If that's the hearsay exception, if it's not offered for the truth of the matter asserted, it's just offered to show that it was said. And here, that would be irrelevant, that anything was said. I am with you on the, you know, the, you can't put in the question and not the answer, right? The plaintiff can't ask the question and then cut the video off at the answer. And that was the, you know, that was in part the judge's- But I, you know, my question is a broader question with respect to this case, which is what evidence here, what exchanges between police and defendants should be coming in pursuant to body cameras or dash cameras? We're going to have this a lot, a lot, where defendants make statements or police officers make statements, and we've got a trial and the police officer can testify to what he or she said, and presumably so can, in this case, the plaintiff. Well, I think each case has to be, you know, analyzed on its own facts. In today's world, police officers wear body cams. In this case, they, the audio was, and the contemporaneous conversation was captured on the dash cam. Well, kind of, kind of. I think that's the issue. I think we just have to be careful not to go too broad to suggest that these are always admissible as, you know, non-hearsay or as a hearsay exception. We do not disagree. I think each case needs to be decided on its own facts, and we think that the trial court got it right here. Now, Ms. Proctor, I think you're the right person to ask this. I can see why the district court judge allowed in the evidence that the drug crime. But I am troubled by the fact that he did not then allow in evidence that no drugs were found on any of the suspects. The fact of drug crime surveillance, although very relevant, of course, is still very prejudicial. And there was such an easy way to counter that prejudice, just by saying no drugs were found. When a judge is faced with highly prejudicial but probative evidence, and there's an easy way to keep the probative value but get rid of the prejudice, how is it not error to fail to do that? Well, we do not believe the trial court committed error. I mean, he did allow evidence that this was a drug investigation. It was very clear that the defense, which we did not do, was not to suggest that Mr. Pryor was involved in the drug trade, or that he himself was dealing drugs. No, look, I mean, the court seemed to think it was fixing the problem by saying that the officer was involved in the drug trade, and Pryor could not say that he was not involved in the drug trade. But is that an even trade? I mean, the officers get in the evidence that they thought Pryor might be involved in the drug trade. Then why shouldn't Pryor be able to say that no drugs were found anywhere? Well, we're dealing with an abuse of discretion standard, and we don't believe that the plaintiff has demonstrated that Judge Seeger committed an abuse of discretion because there was a limiting instruction. If you believe that there was some prejudice, there was a limiting instruction. At the beginning of the trial, the judge instructed the jury that plaintiff was not arrested for a drug-related offense, and that plaintiff was not charged with a drug-related offense. He even barred evidence that there was $690 of cash found on Mr. Pryor's person, and the written jury instruction, docket 304 at page 22 out of 38, clearly instructed the jury that during the trial you heard evidence that police performed the traffic stop in connection with a drug investigation. However, the judge instructed the jury that the plaintiff was not arrested for a drug-related offense and not charged with a drug-related offense. I think it accomplished the same thing and is not an abuse of discretion. I think he worked very hard to ensure a fair trial. Maybe some judges would disagree, and they would maybe do it differently in the way that you suggested, but we believe the limiting instruction here cures any alleged abuse of – cures any prejudice, and it's not an abuse of discretion. And let me ask you one other question. If the new Illinois law codified in 720 ILCS 5-31-1 had been in effect at the time, how do you think that would have affected the outcome of this case? Your Honor, that really speaks to the summary judgment rulings, and my colleague Mr. O'Donnell is prepared to address that point. Great, great. Okay. Thank you. All right, then you may take a rest. Good morning, Judge. Good morning. Good morning, Mr. O'Donnell, and maybe you'll start out with an answer. I will address that specific question. And as Judge Kerr correctly noted, that at the time in which this incident happened, 2015, Section D was not part of the law. And so this underlying crime wasn't an issue, but even if it was, Corrigan would have had probable cause to resist him based off of obstruction, because as the video clearly shows, plaintiff got out of a vehicle, so this was a lawful traffic stop. There's no debating that this was a lawful traffic stop. Plaintiff opened up the door, he closed the door, and then he proceeded south away from the traffic stop. Once he proceeded south away from the traffic stop, that is obstruction. That would have been the underlying charge, which he could have then arrested him for. What if he was walking down the snow-covered driveway at a medium pace, turns around, holds up his hands? At what point is that an obstruction? So the obstruction is just the fact of him leaving a lawful traffic stop away from the actual traffic stop. So the fact that he's moving away, I mean, whether or not he's walking, maybe he's jogging, even with his hands up, in this situation, this is a little bit different, because if you saw the video, his hands are up, but then you could see his hands go down. And once his hands go down, that's when Officer Corrigan approached him, felt him resisting and sort of pushing him into his body, because, again, it's really important to understand, Mr. Pryor was over 75 pounds heavier than Corrigan, and so that act of resistance is what prompted the takedown. Part of the challenge here is we're not talking about a minute or two minutes. We're talking about 12 seconds or so. So each second bears a certain weight, and then both sides obviously try to attach a conclusion to that. In only 12 seconds, then, we're supposed to conclude the obstruction and or the conclusion of an arrest. Is that your position? The position is that when Officer Corrigan got out of the vehicle, the time at which he approached him was actually only about four to five seconds. I mean, so the fact that he got out of his vehicle and moved south, and then to the time at which it was a takedown, that was the total 12 seconds. But the obstruction is simply him moving away from a lawful traffic stop. In any situation in which an officer, and, again, this is based off of an objective standard, which I would get to in terms of the judicial admission, a reasonable officer in Officer Corrigan's shoes would have believed that this individual was fleeing a traffic stop. That action alone constitutes obstruction. Let me ask you a summary judgment-related question. Obviously, the district court here was placed in a challenging position with regard to initially the motion to dismiss, which removes some of the claims, then the summary judgment, and then the bifurcation between the tackle and then the hitting. Correct. Put to the side the argument of whether there should have been a bifurcation. When one views the video, one can wince at the takedown, the leg takedown, especially in the world of excessive force. But that was a matter of summary judgment, but the hitting was not. Correct. Defend that position. Sure. And I think the trial court correctly ruled that the initial takedown was based off of qualified immunity. So he went right into the second part of the analysis of the qualified immunity. He didn't even get into whether or not there was a violation of the protected right. Instead, he asked plaintiff, it is now your burden to prove an analogous case to show a situation in which an individual flees a traffic stop and cannot be tackled. And we showed one case in particular that I think is very important. In this case, it's Hollingsworth versus the city of Aurora. That was an opinion that came down in 2014, which was only one year prior to this incident. And it's also important because it's the city of Aurora. Corrigan works for the city of Aurora. It was his colleague that was part of this case. And in that case, it was a very similar situation in which an individual fled a traffic stop or attempted to flee a traffic stop that had nothing to do with the underlying allegations of a robbery. The person left. Within three seconds, the officer tackled that individual, and the court found that that tackle was reasonable under the circumstances. And to this day, plaintiff has not brought forth one case in which an individual who flees a traffic stop cannot be tackled. And that's the primary ruling for the summary judgment was that qualified immunity. And so then he said the qualified immunity, you are good for the takedown. But the subsequent tackles or the subsequent punches were a genuine issue of material fact because plaintiff is alleging that he wasn't resisting. Corrigan was alleging that he was resisting, and that's why he punched him. Plaintiff alleged that he was punched in the face two times. Corrigan is alleging, I hit you in the arm. And so those two situations are different because there was a genuine issue of material fact as related to the punches but not as it relates to the takedown. You wanted to touch on the Rule 36. I did, and I think this is plaintiff's overarching argument is that a judicial admission here precludes Officer Corrigan and all of the other 11 defendants from arguing that there was probable cause for obstruction because as the court ruled, Officer Corrigan had probable cause based off of obstruction. Now, it's important to note that Officer Corrigan's subjective belief as to why he believed that he had probable cause to arrest is irrelevant to the probable cause analysis. And the reason why it's irrelevant is because the probable cause analysis is an objective one. It's based off of what a reasonable officer would have done if he was in Officer Corrigan's viewpoint. And implicit in that analysis is it's the court's job to determine whether or not there's probable cause based off of the arrest when the facts are not in dispute. The facts are not in dispute here because the video clearly shows what plaintiff did. The only disputes that plaintiff say in regards to the video is he's alleging that he's walking. Well, judges, you can look at the video. He's not walking. And you can make the own determination. And then I just want to put one other point. Plaintiff is alleging that he went to the south of the driveway because he wanted to deescalate the situation and he wanted to get in front of the cop car so that they can get this on video. But it's important to note that plaintiff's subjective intentions is irrelevant to a probable cause analysis because it's not based off of what plaintiff believes. The probable cause analysis is based off what an objective, reasonable officer would have determined had he been in Officer Corrigan's shoes. And that's why the video definitively disproves plaintiff's argument about walking versus not walking. But again, this judicial admission, even if it wasn't admission, it can't stop the court from conducting its own probable cause analysis, which is exactly what the trial court did here. Regardless of the admission, the courts, and this is done multiple times in the Seventh Circuit, you can determine probable cause based off of any offense at the time regardless of Officer Corrigan's subjective belief. And that's why we believe that this judicial admission is irrelevant to the probable cause analysis. And then if I may, just a quick point in terms of the video. This video isn't poor in quality. It doesn't lack audio. It isn't blurry. Judges, you can see exactly what happened in this video, and you can see exactly what Officer Corrigan saw in this video. And that's why you're able to make that determination of probable cause, or if there was not probable cause, there at least would be arguable probable cause, because as Judge Kirk referenced, we did raise that in his affirmative defense. We did raise qualified immunity. Thank you. Thank you, Judge. Thank you very much. Ms. Dykma. All right. Let's give Ms. Dykma three minutes, please. Thank you. First of all, you do have to have an underlying crime for resisting arrest. I got the page in my brief, page 18, cited the Abbott case, the Slaymaker case, and the Torres case. That was the case law prior to this case occurring. The state legislature then codified it and then added that extra subdivision, the subsection that says that you have to have an underlying crime. So if a Rule 36 admission is going to mean anything, it's got to mean that you're taking something out of the case. That's the whole point of having admissions. If you say, I am not claiming that I had probable cause for any crime other than resisting arrest, that means you have walked into summary judgment for the plaintiff. You said, I don't have any underlying offense. And the court, and they also admitted, there was another admission of theirs, that there was no underlying offense. And the judge said there's no underlying offense. So there is no underlying offense. You can't just have resisting arrest. That would create havoc. A police officer could just come up to somebody and just say, I'm arresting you for resisting arrest. Oh, you're not resisting? Well, I can arrest you anyways. Ms. Dimacar, I want to take you to what I think is maybe one of your stronger arguments, this distinction that Judge Seeger made between the excessive force in the tackle and the punching, that one goes to the jury and one does not. We've all seen the video. Mr. O'Donnell's response is the judge accelerated to the QI call on the tackle, but allowed the hitting to go. What are your thoughts? Well, as far as the two punches are concerned, I did want to respond to what was said earlier. The officer is playing to the camera. I think it's fair to say both people might be playing to the camera, but go ahead. When he is hitting him, the second hit, the trial judge mentions that the second hit is when he didn't see any motion at all on Nathaniel Pryor. So this was a gratuitous hit, the second hit. So I don't think this made a very difficult trial because you don't just have a tackle and two punches. You have things in between. What about straddling him? You've got a big man sitting on top of a big man. He can't breathe. His face is in the snow and in the slush. Is that part of the tackle or is that part of the two punches? And can he say that I was already reeling from the tackle because he hit his head on the concrete. And if his head had split open, I might be here on a wrongful death case because this is serious stuff when the police do this. Was there proportionality to what the police officer did when he brought him down? And we're saying no, there was no proportionality. He had somebody who was, he had him. The man was, call it surrendering, call it whatever you want to call it, he had his hands up. And for him to say, well, I took him down to the ground because he's bigger than me, I don't think police officers get to say that, to say you're taller or you're bigger or you're whatever. So I get to do that. But splitting up the case was terrible because, and that's why we had to have all these pre-trial conferences and during trial trying to figure out what comes in and what doesn't come in. Because could Nathaniel Pryor say the tackle was terrible, I felt terrible, my head was splitting. He couldn't even say where his injuries came from because it came from hitting the ground with his head and then being punched. So when he had bruises and lacerations in his face, where did it come from? And I think it's important that this court take note of the fact that this was not, there was no reason for this bringing him down to the ground, and not in this way. He was not, at the point he was placed under arrest, he was not doing anything. He was standing there with his hands up and he was passive. Were his hands, do you believe his hands had started to move downward? I think as the officer was coming towards him, he was reacting to it. He wasn't grabbing for anything. You don't see him grabbing for anything. He didn't have anything to grab for. He didn't have any, he didn't have any gun on him, he didn't have anything. Maybe he grabbed to pull up his pants maybe. It dropped a little bit, but that's as Corrigan was approaching him. And Corrigan, it's very important to note that Corrigan says get on the ground when he is already standing there, standing still with his hands in the air. And Corrigan says get on the ground, and about two seconds later, because it took four seconds for Corrigan to get from his car to where Nathaniel Pryor was, and about two seconds into it he says get on the ground, and then he slams him to the ground. Well, where do you think it would be easier to restrain someone, standing up like that or on the ground? Well, I don't think you slam somebody to the ground, especially when you know that all you have on this person is that he's a passenger in a traffic stop. That's all you have. This drug surveillance, I think we have to look at the facts of that drug surveillance. It didn't amount to anything. It didn't show any criminal activity. So for them to bolster themselves into this was a drug-related investigation, and for the judge to tell the jury the police performed a traffic stop in connection with a drug-related investigation, that was just so heavy. It was just so heavy-handed for the jury to hear that. Then they have to think, well, the police officers must have known something. There must have been some drugs. They saw something. They knew something. They're just not telling us. So I think that that was a problem, and I've used up my time. Thank you. I should say. All right. All right. It's okay. Thank you to everyone. Thank you to Ms. Dykmaar-Karr and to Ms. Proctor and to Mr. O'Donnell, and the case will be taken under advisement.